**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBIE HYLTON<br>24 Opal Street<br>Gallipolis, Ohio 45631 | )<br>)<br>) | CASE NO. |
| | ) | JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| AES RESTAURANT GROUP, LLC<br>1521 Ohio-7<br>Gallipolis, Ohio 45631 | )<br>)<br>) | **(JURY DEMAND ENDORSED HEREIN)** |
| and | )<br>) | |
| AES TRISTATE INC.<br>4000 W. 106th Street, Suite 125-311<br>Carmel, Indiana 46032 | )<br>)<br>) | |
| **Serve also:**<br>Shane Simpson<br>3020 Simpson Street<br>Portsmouth, Ohio 46032 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Kimbie Hylton, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES

1. Hylton is a resident of the Village of Gallipolis, County of Gallian, State of Ohio.

2. Defendants AES Restaurant Group, LLC and/or AES Tristate, Inc., doing business as Arby's Gallipolis (collectively "Arby's) are, respectively, a domestic limited liability company and foreign for-profit corporation, in the Village of Gallipolis, County of Gallia, State of Ohio.

3. Arby's was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

4. Arby's was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12101 *et seq.*

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hylton is alleging federal law claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

6. All material events alleged in this Complaint occurred in Gallia County, Ohio.

7. This Court has supplemental jurisdiction over Hylton's state law claim pursuant to 28 U.S.C. § 1367 because Hylton's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Hylton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00565, against Arby's ("Hylton EEOC Charge").

10. On or about August 25, 2021, the EEOC issued and mailed a Notice of Right to Sue letter regarding the Charges of Discrimination brought by Hylton against Arby's in the Hylton EEOC Charge.

11. Hylton received his Right to Sue letter from the EEOC on or about August 25, 2021, in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Hylton has filed this Complaint within 90 days of receipt of the Notice of Right to Sue letter.

13. Hylton has properly exhausted his administrative remedies, pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Hylton is a former employee of Arby's.

15. Hylton suffers from Attention-Deficit-Hyperactivity Disorder ("ADHD").

16. ADHD substantially limits Hylton in the performance of daily activities.

17. Arby's was aware of Hylton's ADHD.

18. ADHD is a disability.

19. Hylton was disabled.

20. In the alternative, Arby's regarded Hylton as being disabled.

21. Hylton began working for Arby's in October 2018.

22. Hylton was terminated on August 28, 2020.

23. Hylton began working for Arby's as a shift team member.

24. In or about March 2019, Hylton was promoted to shift manager.

25. At all times, Hylton was qualified for his positions.

26. Upon his promotion, Hylton received no training for shift manager.

27. Shortly after being promoted, Hylton was demoted back to shift team member by Lela Last Name Unknown ("Lela LNU").

28. No reason was given for Hylton's demotion.

29. In or about March 2019, Hylton complained about his demotion to Arby's corporate human resources department.

30. In his complaint, Hylton explained that he believed his demotion was an act of discrimination based on his ADHD.

31. Following the lodging of his complaint, Hylton had a meeting with Arby's human resources department.

32. During that meeting, which included Michell Last Name Unknown ("Michelle LNU"), the human resources representative, and Lela LNU, Hylton reminded them of his ADHD disability.

33. Hylton was informed that he would receive the same pay as if he were a shift manager.

34. In or around April 2020, Tiffany Last Name Unknown ("Tiffany LNU") became Hylton's new store manager.

35. Hylton informed Tiffany LNU of his ADHD disability.

36. Michelle LNU and others also told Tiffany LNU of Hylton's ADHD disability.

37. From April through August 2020, Hylton was treated differently than other, similarly-situated, non-disabled employees because of his disability.

38. During that time, Hylton made several complaints of disability discrimination to Arby's corporate human resources department, and to his manager.

39. Arby's did not investigate Hylton's complaints.

40. On or about August 28, 2020, Arby's terminated Hylton's employment.

41. During his employment, Hylton had a good employment record with Arby's.

42. During his employment, Hylton had been promoted from shift team member to Shift Manager.

43. During the time he worked there, Hylton had received positive performance reviews.

44. At the time of his termination, Hylton was a member of a statutorily-protected class.

45. The stated reason for Hylton's termination was that he engaged in abusive and harassing behavior toward other employees.

46. The stated reason for Hylton's termination is false.

47. The stated reason for Hylton's termination was a pretext for discrimination.

48. On information and belief, Arby's replaced Hylton with a non-disabled individual.

49. On information and belief, Arby's has a progressive disciplinary policy ("Discipline Policy").

50. On information and belief, Arby's Discipline Policy includes verbal and written warnings prior to termination.

51. Termination is the highest level of discipline in the Discipline Policy.

52. Arby's knowingly skipped progressive disciplinary steps in terminating Hylton.

53. Arby's knowingly terminated Hylton's employment.

54. Arby's knowingly took an adverse employment action against Hylton.

55. Arby's knowingly took an adverse action against Hylton.

56. Arby's intentionally skipped progressive disciplinary steps in terminating Hylton.

57. Arby's intentionally terminated Hylton's employment.

58. Arby's intentionally took an adverse employment action against Hylton.

59. Arby's intentionally took an adverse action against Hylton.

60. Arby's knew that skipping progressive disciplinary steps in terminating Hylton would cause him harm, including economic harm.

61. Arby's knew that terminating Hylton would cause him harm, including economic harm.

62. Arby's willfully skipped progressive disciplinary steps in terminating Hylton.

63. Arby's willfully terminated Hylton's employment.

64. Arby's willfully took an adverse employment action against Hylton.

65. Arby's willfully took an adverse action against Hylton.

66. Arby's treated Hylton unfavorably based on his disability compared to non-disabled employees who were retained by Arby's.

67. Arby's purported reason for Hylton's termination is a pretext for disability discrimination.

68. Hylton's ADHD constituted a physical and/or mental impairment.

69. Hylton's ADHD significantly limited him in one or more major life activities, including working.

70. Because of his ADHD, Hylton has a record of physical and/or mental impairment.

71. As a direct and proximate result of Arby's conduct, Hylton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT I:  DISABILITY DISCRIMINATION IN VIOLATON OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq*.**

72. Hylton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. Arby's treated Hylton differently than other similarly situated employees based on his disabling condition.

74. Arby's treated Hylton differently than other similarly situated applicants based on his perceived disabling condition.

75. Arby's violated the Americans with Disabilities Act when it terminated Hylton.

76. As a direct and proximate result of Arby's conduct, Hylton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II:  DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112.01 *et seq.*

77. Hylton restates each and every prior paragraph of this Complaint, as it were fully restated herein.

78. Arby's treated Hylton differently than other similarly-situated employees based on his disabling condition.

79. Arby's treated Hylton differently than other similar-situated employees based on his perceived disabling condition.

80. Arby's terminated Hylton's employment based on his disability.

81. Arby's terminated Hylton's employment based on his perceived disability.

82. Arby's violated R.C. § 4112.02 when it discharged Hylton based on his disability.

83. Arby's violated R.C. § 4112.02 when it discharged Hylton based on his perceived disability.

84. Arby's violated R.C. § 4112.02 by discriminating against Hylton based on his disabling condition.

85. Arby's violated R.C. § 4112.02 by discriminating against Hylton based on his perceived disabling condition.

86. As a direct and proximate result of Arby's conduct, Hylton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III:  RETALIATION IN VIOLATION OF AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12101 *et seq*.

87. Hylton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

88. As a result of Arby's discriminatory conduct described above, Hylton complained about the disability discrimination he was being subjected to.

89. Subsequent to Hylton's reporting of disability discrimination to his supervisor, employer, and filing complaints, Hylton was demoted, and, subsequently terminated

90. Arby's actions were retaliatory in nature based on Hylton's opposition to the unlawful discriminatory conduct.

91. The ADA prohibits retaliation for reporting disability discrimination.

92. As a direct and proximate result of Arby's conduct, Hylton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. §4112.02 *et seq.*

93. Hylton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

94. As a result of Arby's discriminatory conduct described above, Hylton complained about the disability discrimination she was being subjected to.

95. Subsequent to Hylton's reporting of disability discrimination to his supervisor, employer, and filing complaints, Hylton was demoted, and, subsequently terminated

96. Arby's actions were retaliatory in nature based on Hylton's opposition to the unlawful discriminatory conduct.

97. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

98. As a direct and proximate result of Arby's conduct, Hylton suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Kimbie Hylton respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

  (i) Requiring Defendants to abolish discrimination, harassment, and retaliation;

  (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

  (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

  (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendants of compensatory and monetary damages to compensate Hylton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendants in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Hylton claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Gregory T. Shumaker*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
P: (614) 683-7331
F: (216) 291-5744
E: trisha.breedlove@spitzlawfirm.com
E: greg.shumaker@spitzlawfirm.com
*Attorneys For Plaintiff Kimbie Hylton*

## JURY DEMAND

Plaintiff Kimbie Hylton demands a trial by jury by the maximum number of jurors permitted.

*/s/ Gregory T. Shumaker*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**THE SPITZ LAW FIRM, LLC**